IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ANDREA B.,[1]                                              Case No. 6:22-cv-01286-SB

                Plaintiff,                     **OPINION AND ORDER**

       v.

KILOLO KIJAKAZI, Acting Commissioner of
Social Security,

                Defendant.

---

**BECKERMAN, U.S. Magistrate Judge.**

       Andrea B. ("Plaintiff") brings this appeal challenging the Commissioner of Social

Security's ("Commissioner") denial of her application for Disabled Widow's Benefits ("DWB")

under Title II of the Social Security Act.[2] The only dispute on appeal is whether the Court should

remand this case for further proceedings or an award of benefits. (*See* Def.'s Br. & Req. Remand

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party.

[2] DWB are "a survivor's benefit based on the widow's disability and the deceased
person's insured status." *Aarestad v. Comm'r of Soc. Sec. Admin.*, 450 F. App'x 603, 604 n.1
(9th Cir. 2011). The widow must be "disabled" but does not need to be "an insured in her own
right." *Id.*

("Def.'s Br.") at 2, ECF No. 15, agreeing that the Court should reverse and remand but not for an award of benefits).

The Court has jurisdiction over this appeal pursuant to 42 U.S.C. § 405(g), and the parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court reverses the Commissioner's decision and remands for further proceedings.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "not supported by substantial evidence or based on legal error." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "may not substitute [its] judgment for the [Commissioner's]." *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

///

///

**BACKGROUND**

## I.  PLAINTIFF'S APPLICATION

Plaintiff was born in June 1966, making her at least fifty years old during the relevant time period.[3] (Tr. 15-26, 395, 427-28, 449-50, 576.) Plaintiff has a General Equivalency Diploma ("GED") and past work experience as a waitress and cashier. (*Id.* at 18, 22-25, 397, 414-15, 640.) In her application, Plaintiff alleges disability due to heart issues, arthritis in her hands and arms, sleep apnea, partial paralysis of the left arm, limited use of the right hand, and asthma. (*Id.* at 428, 450.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on December 2, 2020, Plaintiff requested a hearing before an ALJ. (*Id.* at 15.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing held on June 17,

---

[3] As the parties seem to agree (*see* Pl.'s Opening Br. at 1-2 & n.1, ECF No. 11; Def.'s Br. at 2-3; *see also* Tr. 15-26, 395, 427-28, 449-50, 576), Plaintiff's eligibility for DWB turned on whether she was "at least 50 years old and ha[d] a disability . . . [that] started not later than 7 years after [her husband] died," i.e., a disability that started not later than January 31, 2017 given her husband's death on January 20, 2010. *See* 20 C.F.R. § 404.336(c) (detailing the DWB eligibility period); *Miles v. Soc. Sec. Admin., Comm'r*, 469 F. App'x 743, 744 (11th Cir. 2012) ("The ALJ found, and the parties did not contest, that the prescribed period within which [the claimant] had to demonstrate her disability ran from March 1, 1991 to March 31, 1998." (citing 20 C.F.R. § 404.336(c))); *Schnorr v. Comm'r of Soc. Sec. Admin.*, No. 20-cv-00712, 2021 WL 3030218, at *1 (D. Ariz. July 19, 2021) (explaining that the claimant needed to "establish disability within seven years of her husband's death, [i.e.,] prior to October 31, 2018"). Plaintiff amended her alleged onset date ("AOD") to June 6, 2016, the day before her fiftieth birthday (*see, e.g.*, Tr. 395), but the Administrative Law Judge ("ALJ") incorrectly stated that Plaintiff's amended AOD was June 6, 2015 and thus treated the relevant time period as June 6, 2015 (instead of June 6, 2016) through January 31, 2017. (*See id.* at 15-26, 395, 427-28, 449-50, 576.) On appeal, Plaintiff "uses an AOD . . . of June 6, 2015" because of the ALJ's framing of the period under review, but effectively acknowledges that her correct AOD is June 6, 2016. (*See* Pl.'s Opening Br. at 2 & n.1; *id.* at 14; Tr. 395, reflecting that Plaintiff's counsel amended to "6/7/16" but then agreed with the ALJ that the amended AOD should be "June 6th for Social Security purposes").

2021.[4] (*Id.* at 393-419.) On August 2, 2021, the ALJ issued a written decision denying Plaintiff's

application. (*Id.* at 15-26.) On July 12, 2022, the Appeals Council denied Plaintiff's request for

review, making the ALJ's written decision the final decision of the Commissioner. (*Id.* at 1-7.)

Plaintiff now seeks judicial review of that decision.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment

which . . . has lasted or can be expected to last for a continuous period of not less than 12

months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential

process for determining whether an applicant is disabled within the meaning of the Social

Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five

steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the

claimant has a severe impairment; (3) whether the impairment meets or equals a listed

impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the

claimant can perform other work that exists in significant numbers in the national economy. *Id.*

at 724-25.

The claimant bears the burden of proof for the first four steps. *See Bustamante v.*

*Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any

of those steps, the claimant is not disabled. *See id.* at 954. The Commissioner bears the burden of

proof at step five, where the Commissioner must show the claimant can perform other work that

exists in significant numbers in the national economy, "taking into consideration the claimant's

residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If

---

[4] During the hearing, Plaintiff withdrew her application for a period of disability and
Disability Insurance Benefits. (Tr. 15, 395.)

the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante*, 262 F.3d

at 954.

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff was

disabled before January 31, 2017. (Tr. 15-26.) At step one, the ALJ determined that Plaintiff had

not engaged in substantial gainful activity since June 6, 2015, one year before her amended

AOD. (*See id.* at 18, 395.) At step two, the ALJ found that Plaintiff suffered from the following

severe, medically determinable impairments: "[O]besity and lumbar degenerative disc disease."

(*Id.* at 18.)

At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or

medically equals a listed impairment. (*Id.* at 21.) The ALJ then concluded that Plaintiff had the

residual functional capacity ("RFC") to perform "the full range of light work" without

restrictions. (*Id.* at 22.) At step four, the ALJ determined that Plaintiff was not disabled during

the relevant time period because she was able to perform her past relevant work as a waitress.

(*Id.* at 25.)

## DISCUSSION

The only issue in dispute is whether the Court should remand for further proceedings or

an award of benefits. (*See* Def.'s Br. at 2, seeking remand for further proceedings; *see also* Pl.'s

Opening Br. at 19-20, arguing that the Court should remand this case for an award of benefits;

Pl.'s Reply Br. at 1-10, ECF No. 16, opposing the Commissioner's request to remand for further

proceedings). As explained below, the Court concludes that further proceedings are necessary

here.

///

///

I.    APPLICABLE LAW

A.    The Ordinary Remand or Default Rule

Where, as here, a district court determines (or the parties stipulate) that the
Commissioner's decision is not supported by substantial evidence or based on harmful legal
error, "sentence four of [42 U.S.C.] § 405(g) authorizes the court to 'revers[e] the decision of the
Commissioner . . . , with or without remanding the cause for a rehearing.'" *Treichler v. Comm'r
of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting 42 U.S.C. § 405(g)). Except in
"rare circumstances," the "proper course" is to remand for "additional investigation or
explanation." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2017) (quoting *Treichler*, 775
F.3d 1099). Thus, courts generally follow the "ordinary remand" or "default" rule and remand
for further proceedings. *See Treichler*, 775 F.3d at 1099-1100 (noting that courts "generally
remand" for further proceedings under the "ordinary remand rule," which "generally guides [the]
review of administrative decisions"); *see also Miskey v. Kijakazi*, 33 F.4th 565, 574-75 (9th Cir.
2022) (affirming the district court's decision to follow the "default rule" and remand for further
proceedings).

B.    The *Varney* or Credit-as-True Rule

Congress has also "granted courts some additional flexibility in [42 U.S.C.] § 405(g) 'to
reverse or modify an administrative decision without remanding the case for further
proceedings.'" *Treichler*, 775 F.3d at 1099 (quoting *Harman v. Apfel*, 211 F.3d 1172, 1177-78
(9th Cir. 2000)). Consequently, courts may remand for an immediate award of benefits in
"appropriate circumstances." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir.
2014)).

Remanding for an award of benefits is not appropriate unless three "prerequisites are
met." *See Dominguez*, 808 F.3d at 407-08 (explaining that Ninth Circuit "case law precludes a

district court from remanding a case for an award of benefits unless [three] prerequisites are met" (citing *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014))). The Ninth Circuit refers to this three-part legal framework as the "*Varney*" or "credit-as-true" rule. *See Treichler*, 775 F.3d at 1100 ("[The Ninth Circuit] distilled the *Varney* rule (sometimes referred to as the 'credit-as-true' rule) into three [prerequisites]."); *see also Garrison*, 759 F.3d at 999, 1019-23 (applying and referring interchangeably to the three-part "credit-as-true" rule, standard, doctrine, and analysis); *Dominguez*, 808 F.3d at 407-10 (applying and referring generally to the three-part "legal framework" for analyzing whether a court abused its discretion in selecting an appropriate remand remedy).

### 1.    The First Prerequisite

The first prerequisite is that the ALJ "failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." *Leon v. Berryhill*, 880 F.3d 1041, 1044-45 (9th Cir. 2018) (quoting *Garrison*, 759 F.3d at 1020); *see also Treichler*, 775 F.3d at 1100-01 (asking first if the "ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion" (quoting *Garrison*, 759 F.3d at 1020)); *Dominguez*, 808 F.3d at 407 ("[A] court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence." (citing *Burrell*, 775 F.3d at 1141)).

### 2.    The Second Prerequisite

The second prerequisite is that there are no outstanding issues that must be resolved before a disability determination can be made and further proceedings would serve no useful purpose.[5] *See Leon*, 880 F.3d at 1045 ("[Second], we determine 'whether there are outstanding

---

[5] In a footnote in *Garrison*, the Ninth Circuit stated that the third prerequisite, which the Court details below, "naturally incorporates what [the Ninth Circuit] ha[s] sometimes described

issues that must be resolved before a disability determination can be made, and whether further administrative proceedings would be useful.'" (ellipses omitted) (quoting *Treichler*, 775 F.3d at 1101)).

"Administrative proceedings are generally useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence may well prove enlightening in light of the passage of time[.]" *Treichler*, 775 F.3d at 1101 (simplified). As such, a court's evaluation of whether the second prerequisite is satisfied necessarily involves consideration of, among other things, "whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules." *Id.* at 1103-04 (citations omitted); *see also Leon*, 880 F.3d at 1046-47 ("The second [prerequisite] . . . requires us to determine whether the record has been developed thoroughly and is free of conflicts, ambiguities, or gaps."); *Dominguez*, 808 F.3d at 407-10 (turning second to "whether the record ha[d] been fully developed and further administrative proceedings would serve no useful

---

as a distinct requirement of the [three-part analysis], namely that there are no outstanding issues that must be resolved before a determination of disability can be made." 759 F.3d at 1020 n.26. More recently, however, the Ninth Circuit has explained that a distinct requirement under the second prerequisite is that there are no outstanding issues that must be resolved before a determination of disability can be made. *See Treichler*, 775 F.3d at 1106 ("[O]ur case law . . . requires us to assess whether there are outstanding issues requiring resolution *before* considering whether to hold that the [improperly discredited evidence] is credible as a matter of law. . . . [O]nly where 'there are no outstanding issues that must be resolved before a determination of disability can be made,' do we have discretion to credit [improperly discredited evidence] as true and remand for benefits, and only then where [the third prerequisite is met, i.e.,] 'it is clear from the record that the ALJ would be required to find [the claimant] disabled' were such evidence credited.") (citations omitted); *Leon*, 880 F.3d at 1045-48 (explaining that "*Treichler* provides a second part of the analysis that asks," among other things, "whether there are outstanding issues that must be resolved before a determination of disability can be made" and declining to "reach step three . . . because at step two [of the analysis], it [was] clear that further administrative proceedings [were] needed to make a disability determination") (simplified).

PAGE 8 – OPINION AND ORDER

purpose," i.e., whether the record had been "fully developed, [was] free from conflicts and ambiguities, and all essential factual issues ha[d] been resolved," and explaining that further proceedings were "require[d]" because of "inconsistencies, conflicts, and gaps in the record") (simplified).

### 3.    The Third Prerequisite

The third prerequisite is that "'the ALJ would be *required* to find the claimant disabled on remand' if the 'improperly discredited evidence were credited as true.'" *Dominguez*, 808 F.3d at 407 (emphasis added) (quoting *Burrell*, 775 F.3d at 1141). In other words, assuming the "first two [prerequisites] are satisfied, [the court] credit[s] the discredited [evidence] as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability." *Leon*, 880 F.3d at 1045 (citing *Treichler*, 775 F.3d at 1101); *see also Treichler*, 775 F.3d at 1101 ("Third, if we conclude that no outstanding issues remain and further proceedings would not be useful, we may apply our prophylactic *Varney* rule, finding the relevant testimony credible as a matter of law, . . . and then determine whether the record, taken as a whole, leaves not the slightest uncertainty as to the outcome of the proceeding.") (simplified); *Dominguez*, 808 F.3d at 407 ("Said otherwise, the district court must consider the testimony or opinion that the ALJ improperly rejected, in the context of the otherwise undisputed record, and determine whether the ALJ would necessarily have to conclude that the claimant were disabled if that testimony or opinion were deemed true."); *Leon*, 880 F.3d at 1044, 1047 (reiterating that there should not be the slightest uncertainty as to the outcome and explaining that "[e]ven if the record was fully developed and the improperly discredited evidence [was] credited as true, it [was] not certain that the ALJ would be required to find [the claimant] legally disabled under the third part of the credit-as-true standard").

///

PAGE 9 – OPINION AND ORDER

### 4.    Discretionary Flexibility

If the third prerequisite is satisfied, "the district court may exercise its discretion to remand the case for an award of benefits." *Dominguez*, 808 F.3d at 407 (quoting *Burrell*, 775 F.3d at 1141). A district court, however, is "generally not required to exercise such discretion[.]" *Id.* (citing *Connett v. Barnhart*, 340 F.3d 871, 874-76 (9th Cir. 2003) and *Harman*, 211 F.3d at 1178)).

Indeed, in *Treichler*, the Ninth Circuit explained that even if the credit-as-true prerequisites are met, a court is not required to exercise its discretion to remand for an award of benefits:

> When all three elements of this *Varney* rule are satisfied, a case raises the rare circumstances that allow us to exercise our discretion to depart from the ordinary remand rule. Of course, even when those rare circumstance are present, the decision whether to remand a case for additional evidence or simply to award benefits is in our discretion[.] . . . We have frequently exercised our discretion to remand for further proceedings, rather than for benefits. . . .

775 F.3d at 1101 (simplified). The Ninth Circuit recently reiterated this point about a court's discretionary flexibility. *See Washington v. Kijakazi*, 72 F.4th 1029, 1041 (9th Cir. 2023) ("Even if all three [prerequisites] are met, '[t]he decision whether to remand a case for [further proceedings] or simply to award benefits is in [a court's] discretion.'" (quoting *Treichler*, 775 F.3d at 1101-02)); *see also Leon*, 880 F.3d at 1045 (explaining that *Treichler* "examined the extent of [a court's discretionary] 'flexibility'" to remand for an award of benefits and "emphasiz[ed] the court's discretion is a departure from the ordinary remand rule," a claimant's satisfaction of the *Varney* rule "does not automatically result in a determination that the claimant . . . should be awarded benefits immediately," and the "*Varney* rule does not require a court to remand for an immediate award of benefits when the three *Varney* rule conditions have been satisfied").

## II.    ANALYSIS

The Court declines to remand for an award of benefits and instead remands for further proceedings.

### A.    The First Prerequisite

The Court finds that the first credit-as-true prerequisite is satisfied. In her opening brief, Plaintiff argued that the ALJ erred by failing to (1) identify evidence demonstrating that Plaintiff had any past relevant work experience; (2) conclude that Plaintiff's coronary artery disease was a severe medically determinable impairment at step two of the sequential evaluation process; (3) consider the opinion of Plaintiff's treating physician, Katherine Beckstrand, M.D.; (4) provide legally sufficient reasons for discounting the opinion of Plaintiff's treating physician, Dawn Leslie Mehlhaff, M.D.; and (5) provide clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's symptom testimony. (Pl.'s Opening Br. at 2-3, 5, 8, 11, 13.)

In response, the Commissioner concedes that the ALJ committed harmful legal errors that warrant remand. (*See* Def.'s Br. at 2.) The Commissioner acknowledges that ALJ needs to, among other things, consider whether Plaintiff's coronary artery disease was a severe medically determinable impairment and the extent to which Plaintiff's coronary artery disease affects her ability to work, reassess Plaintiff's RFC in light of "all of [her] impairments," and "reevaluate Plaintiff's [symptom] testimony, including her testimony related to coronary artery disease[.]" (*Id.* at 2-3.) The Commissioner also acknowledges that the first credit-as-true prerequisite is met. (*Id.* at 4.)

In light of the foregoing, the Court concludes that the first credit-as-true prerequisite is satisfied. *See Dominguez*, 808 F.3d at 408 ("The threshold [credit-as-true] requirement, that the ALJ made a legal error in failing to provide legally sufficient reasons for rejecting evidence, is

met, because it is undisputed that the ALJ erred in rejecting [the claimant's treating physician's] opinions.").

### B.    The Second Prerequisite

The Court concludes that the second credit-as-true prerequisite is not met and thus does not proceed to address the third credit-as-true prerequisite. *See Treichler*, 775 F.3d at 1107 ("Because further administrative proceedings are necessary, [the claimant] has failed to satisfy the second step of the *Varney* rule. Accordingly, we do not reach the third step of the rule[.]"); *Dominguez*, 808 F.3d at 408-10 (addressing the second prerequisite and explaining that because "inconsistencies, conflicts, and gaps in the record that require[d] further administrative proceedings, [the court did] not proceed to the next question, whether the ALJ would be required to find [the claimant] disabled if [her treating physician's] inconsistent reports were credited as true").

The Commissioner argues that the second prerequisite is not met. (*See* Def.'s Br. at 4.) In support, the Commissioner emphasizes that the non-examining state agency medical consultants found insufficient evidence to support a finding of disability before January 31, 2017, the end of the prescribed period under review. (*Id.*, citing Tr. 443-49.) The Commissioner also emphasizes that under the new regulations, which apply to Plaintiff's DWB claim, the state agency medical consultants' opinions "stand on equal footing with those from treating or examining sources[.]"[6] (*Id.*)

---

[6] Plaintiff filed her application in December 2019 (Tr. 15), and therefore the new regulations regarding the evaluation of medical opinion evidence apply. *See Woods v. Kijakazi*, 32 F.4th 785, 787-92 (9th Cir. 2022) (observing that "[t]he new regulations apply to [a claimant's case if] she filed her claim on or after March 27, 2017" and explaining that the new regulations displace the "irreconcilable" and "incompatible" specific and legitimate reasons standard, and the "former hierarchy of medical opinions" do not apply to claims subject to the new regulations). The parties agree that the new regulations apply. (Pl.'s Opening Br. at 8-9; Def.'s Br. at 4.)

Plaintiff disagrees with the Commissioner's argument that further proceedings are necessary. (*See* Pl.'s Reply at 1-10.) Plaintiff notes that the state agency medical consultants concluded that Plaintiff's "Valvular Heart Disease or Other Stenotic Defects, or Valvular Regurgitation" was a severe medically determinable impairment, and the ALJ found the state agency medical consultants' opinions to be persuasive and did not discount or otherwise address this severity finding. (Pl.'s Opening Br. at 8, citing Tr. 431-32, 458-59; Pl.'s Reply at 2, citing Tr. 25, 431-32, 458-59.)

To the extent the Commissioner argues that the second prerequisite is not met because the state agency medical consultants' opinions create "significant factual conflicts and ambiguities" in the record, Plaintiff argues that the Commissioner's argument fails for three reasons. (*See* Pl.'s Reply at 4-5.) As explained below, the Court finds unpersuasive all three of Plaintiff's reasons.

First, Plaintiff argues that the ALJ and state agency medical consultants relied on an inappropriate legal standard for assessing a claimant's testimony, as both the ALJ and certain state agency medical consultants cited the fact that it was not "obvious" that Plaintiff was disabled before the end of the prescribed period under review. (*See id.* at 4.) Contrary to Plaintiff's argument, the question here is not the appropriate standard for assessing a claimant's testimony, but rather whether the record has been developed thoroughly and is free of conflicts, ambiguities, or gaps. *See Leon*, 880 F.3d at 1046-47 ("The second step of the credit-as-true analysis requires us to determine whether the record has been developed thoroughly and is free of conflicts, ambiguities, or gaps." (citing *Treichler*, 775 F.3d at 1103 and *Dominguez*, 808 F.3d at 410).

Additionally, the ALJ noted that the state agency medical consultants, whose opinions were "persuasive," determined that the "medical evidence of record for the relevant time period

[was] insufficient to adequately assess the claimant's condition such that a disabling level of

impairment [was] not obvious prior to January 31, 2017, the end of the prescribed period."

(Tr. 25, citing Tr. 442-44.) Regardless of how the ALJ framed this finding or portions of these

opinions, it is clear that the state agency medical consultants (1) concluded that the record did

not support a finding of disability, and (2) separately addressed the insufficiency of the evidence

during the relevant period (and despite suggesting that Plaintiff's coronary artery disease was a

severe impairment), and that a disabling level of impairment was not obvious. (*See* Tr. 442-48,

456-61, stating that the medical evidence of record on "file for [the] relevant time period [was]

insufficient to adequately assess [Plaintiff's] conditions," a "[d]isabling level [of] impairment

[was] not obvious," there was "insuff[icient] evidence," there was "insufficient evidence to

determine consistency," there was "[i]nsufficient evidence" before the "controlling ending period

1/31/17 for DWB," and Plaintiff was "not disabled"; *see also id.* at 423-25, 431-32, observing

that there was "limited evidence" preceding the "end of [the] prescribed period," a medically

determinable impairment was "established, but there [was] insufficient evidence in [the] file to

determine functioning," and Plaintiff was "not disabled") (all caps omitted).

Second, Plaintiff argues that "the opinions of non-examining doctors declaring

'insufficient evidence' do not constitute objective medical evidence, and do not contradict

[Plaintiff's] testimony." (Pl.'s Reply at 5, citing *Eden v. Colvin*, No. 6:17-cv-00576-MC, 2018

WL 2445029, at *3 (D. Or. May 31, 2018).) *Eden*, however, is distinguishable because, unlike

this case, the former hierarchy of medical opinions applied there. *See* 2018 WL 2445029, at *3

(addressing the appropriate remedy and credit-as-true-standard, assessing a dispute about factual

discrepancies, and citing case law interpreting the former regulations in support of the statement

that "[t]he opinions of non-examining physicians do not, by themselves, constitute substantial

evidence that justifies the rejection of the treating doctor."). Furthermore, courts in this district have remanded for further proceedings under circumstances similar to those presented here and characterized state agency medical opinions on insufficient evidence and absence of disability as a "significant ambiguity" supporting such an outcome. *See, e.g.*, *Kurt H. v. Saul*, No. 6:19-cv-01987-SI, 2021 WL 1187055, at *7 (D. Or. Mar. 29, 2021) ("Although the Court believes the record contains strong evidence that Plaintiff was disabled at least from December 1, 2015, and has accordingly focused on conflicts and gaps in the records about the onset date of Plaintiff's disability, the Court notes that state-agency reviewers found insufficient evidence of *any* disability. . . . This represents a significant ambiguity in the record as to the limitations caused by Plaintiff's severe impairments.").

The district court in *Kurt H.* also identified a problem in the claimant's remedy argument that applies equally here:

> Plaintiff asks the Court to credit his own testimony to establish disability as of June 18, 2010. That request, however, reveals the second problem with Plaintiff's argument: it ignores the Ninth Circuit's instruction that a district court 'assess whether there are outstanding issues requiring resolution *before* considering whether' to credit testimony as true. . . . There are gaps, conflicts, and ambiguities about the onset date of Plaintiff's disability, the Court cannot override those conflicts by crediting Plaintiff's testimony.

*Id.* at *8 (quoting *Treichler*, 775 F.3d at 1105).

Plaintiff fails adequately to account for the same instruction in seeking remand for benefits. (*See* Pl.'s Reply at 1-10.) The Court cannot override the notable conflicts identified above and proceed to the third prerequisite. *See Kurt H.*, 2021 WL 1187055, at *8 ("Because the Court finds that the record contains gaps, inconsistencies, and ambiguities, . . . the Court need not determine whether, if the improperly rejected testimony were credited as true, the ALJ would be required to find that Plaintiff is disabled. The Court declines to remand for award of benefits and instead remands for further proceedings.").

PAGE 15 – OPINION AND ORDER

Third and finally, and with respect to the sufficiency of the evidence during the relevant period, Plaintiff argues that it is improper to discount a claimant's testimony based on her failure to "obtain treatment she cannot afford." (Pl.'s Reply at 5.) Again, however, that is not the question before the Court.

Consistent with these authorities and for these reasons, the Court remands this case for further proceedings.

## CONCLUSION

For the reasons stated, the Court REVERSES the Commissioner's decision and REMANDS for further proceedings.

**IT IS SO ORDERED.**

DATED this 8th day of September, 2023.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge